*270 Justice Ginsburg
delivered the opinion of the Court.
Cory R. Maples is an Alabama capital prisoner sentenced to death in 1997 for the murder of two individuals. At trial, he was represented by two appointed lawyers, minimally paid and with scant experience in capital cases. Maples sought postconviction relief in state court, alleging ineffec­tive assistance of counsel and several other trial infirmities. His petition, filed in August 2001, was written by two New York attorneys serving pro bono, both associated with the same New York-based large law firm. An Alabama attor­ney, designated as local counsel, moved the admission of the out-of-state counsel pro hac vice. As understood by New York counsel, local counsel would facilitate their appearance, but would undertake no substantive involvement in the case.
In the summer of 2002, while Maples’ postconviction peti­tion remained pending in the Alabama trial court, his New York attorneys left the law firm; their new employment dis­abled them from continuing to represent Maples. They did not inform Maples of their departure and consequent inabil­ity to serve as his counsel. Nor did they seek the Alabama trial court’s leave to withdraw. Neither they nor anyone *271 else moved for the substitution of counsel able to handle Ma­ples’ case.
In May 2003, the Alabama trial court denied Maples’ peti­tion. Notices of the court’s order were posted to the New York attorneys at the address of the law firm with which they had been associated. Those postings were returned, unopened, to the trial court clerk, who attempted no further mailing. With no attorney of record in fact acting on Ma­ples’ behalf, the time to appeal ran out.
Thereafter, Maples petitioned for a writ of habeas corpus in federal court. The District Court and, in turn, the Elev­enth Circuit, rejected his petition, pointing to the procedural default in state court, i. e., Maples’ failure timely to appeal the Alabama trial court’s order denying him postconviction relief. Maples, it is uncontested, was blameless for the default.
The sole question this. Court has taken up for review is whether, on the extraordinary facts of Maples’ case, there is “cause” to excuse the default. Maples maintains that there is, for the lawyers he believed to be vigilantly representing him had abandoned the case without leave of court, without informing Maples they could no longer represent him, and without securing any recorded substitution of counsel. We agree. Abandoned by counsel, Maples was left unrepre­sented at a critical time for his state posteonviction petition, and he lacked a clue of any need to protect himself pro se. In these circumstances, no just system would lay the default at Maples’ death-cell door. Satisfied that the requisite cause has been shown, we reverse the Eleventh Circuit’s judgment.
I
A
Alabama sets low eligibility requirements for lawyers ap­pointed to represent indigent capital defendants at trial. American Bar Association, Evaluating Fairness and Accu­ *272 racy in State Death Penalty Systems: The Alabama Death Penalty Assessment Report 117-120 (June 2006) (hereinafter ABA Report); Brief for Former Alabama Appellate Court Justices et al. as Amici Curiae 7-8 (hereinafter Former Jus­tices Brief). Appointed counsel need only be a member of the Alabama Bar and have “five years’ prior experience in the active practice of criminal law.” Ala. Code § 13A-5-54 (2006). Experience with capital cases is not required. For­mer Justices Brief 7-8. Nor does the State provide, or require appointed counsel to gain, any capital-case-specific professional education or training. ABA Report 129-131; Former Justices Brief 14-16.
Appointed counsel in death penalty cases are also under-­compensated. ABA Report 124-129; Former Justices Brief 12-14. Until 1999, the State paid appointed capital defense attorneys just “$40.00 per hour for time expended in court and $20.00 per hour for time reasonably expended out of court in the preparation of [the defendant’s] case.” Ala. Code §15-12-21(d) (1995). Although death penalty litiga­tion is plainly time intensive,[1] the State capped at $1,000 fees recoverable by capital defense attorneys for out-of-court work. Ibid.[2] Even today, court-appointed attorneys re­ceive only $70 per hour. § 15-12-21(d) (2011).
Nearly alone among the States, Alabama does not guar­antee representation to indigent capital defendants in postconviction proceedings. ABA Report 111-112, 158-160; *273 Former Justices Brief 33. The State has elected, instead, “to rely on the efforts of typically well-funded [out-of-state] volunteers.” Brief in Opposition in Barbour v. Allen, O. T. 2006, No. 06-10605, p. 23. Thus, as of 2006, 86% of the at­torneys representing Alabama’s death row inmates in state collateral review proceedings “either worked for the Equal Justice Initiative (headed by NYU Law professor Bryan Stevenson), out-of-state public interest groups like the Inno­cence Project, or an out-of-state mega-firm.” Brief in Oppo­sition 16, n. 4. On occasion, some prisoners sentenced to death receive no postconviction representation at all. See ABA Report 112 (“[A]s of April 2006, approximately fifteen of Alabama’s death row inmates in the final rounds of state appeals had no lawyer to represent them.”).
B
This system was in place when, in 1997, Alabama charged Maples with two counts of capital murder; the victims, Stacy Alan Terry and Barry Dewayne Robinson II, were Maples’ friends who, on the night of the murders, had been out on the town with him. Maples pleaded not guilty, and his case proceeded to trial, where he was represented by two court-­appointed Alabama attorneys. Only one of them had earlier served in a capital case. See Tr. 3081. Neither counsel had previously tried the penalty phase of a capital case. Com­pensation for each lawyer was capped at $1,000 for time spent out of court preparing Maples’ case, and at $40 per hour for in-court services. See Ala. Code § 15-12-21 (1995).
Finding Maples guilty on both counts, the jury recom­mended that he be sentenced to death. The vote was 10 to 2, the minimum number Alabama requires for a death recom­mendation. See Ala. Code § 13A-5-46(f) (1994) (“The deci­sion of the jury to recommend a sentence of death must be based on a vote of at least 10 jurors.”). Accepting the jury’s recommendation, the trial court sentenced Maples to death. *274 On direct appeal, the Alabama Court of Criminal Appeals and the Alabama Supreme Court affirmed the convictions and sentence. Ex parte Maples, 758 So. 2d 81 (Ala. 1999); Maples v. State, 758 So. 2d 1 (Ala. Crim. App. 1999). We denied certiorari. Maples v. Alabama, 531 U. S. 830 (2000).
Two out-of-state volunteers represented Maples in post-­conviction proceedings: Jaasi Munanka and Clara Ingen-­Housz, both associates at the New York offices of the Sulli­van & Cromwell law firm. At the time, Alabama required out-of-state attorneys to associate local counsel when seek­ing admission to practice pro hac vice before an Alabama court, regardless of the nature of the proceeding. Rule Gov­erning Admission to the Ala. State Bar VII (2000) (herein­after Rule VII).[3] The Alabama Rule further prescribed that the local attorney’s name “appear on all notices, orders, pleadings, and other documents filed in the cause,” and that local counsel “accept joint and several responsibility with the foreign attorney to the client, to opposing parties and coun­sel, and to the court or administrative agency in all matters [relating to the case].” Rule VII(C).
Munanka and Ingen-Housz associated Huntsville, Ala­bama, attorney John Butler as local counsel. Notwithstand­ing his obligations under Alabama law, Butler informed Mu-­nanka and Ingen-Housz, “at the outset,” that he would serve as local counsel only for the purpose of allowing the two New York attorneys to appear pro hac vice on behalf of Maples. App. to Pet. for Cert. 255a. Given his lack of “resources, available time [and] experience,” Butler told the Sullivan & Cromwell lawyers, he could not “deal with substantive issues in the case.” Ibid. The Sullivan & Cromwell attorneys ac­cepted Butler’s conditions. Id., at 257a. This arrangement between out-of-state and local attorneys, it appears, was *275 hardly atypical. See Former Justices Brief 36 (“The fact is that local counsel for out-of-state attorneys in postconviction litigation most often do nothing other than provide the mech­anism for foreign attorneys to be admitted.”).
With the aid of his pro bono counsel, Maples filed a petition for postconviction relief under Alabama Rule of Criminal Procedure 32.[4] Among other claims, Maples asserted that his court-appointed attorneys provided constitutionally in­effective assistance during both guilt and penalty phases of his capital trial. App. 29-126. He alleged, in this regard, that his inexperienced and underfunded attorneys failed to develop and raise an obvious intoxication defense, did not object to several egregious instances of prosecutorial mis­conduct, and woefully underprepared for the penalty phase of his trial. The State responded by moving for summary dismissal of Maples’ petition. On December 27, 2001, the trial court denied the State’s motion.
Some seven months later, in the summer of 2002, both Munanka and Ingen-Housz left Sullivan & Cromwell. App. to Pet. for Cert. 268a. Munanka gained a clerkship with a federal judge; Ingen-Housz accepted a position with the European Commission in Belgium. Ibid. Neither attorney told Maples of their departure from Sullivan & Cromwell or of their resulting inability to continue to represent him. In disregard of Alabama law, see Ala. Rule Crim. Proc. 6.2, Comment, neither attorney sought the trial court’s leave to withdraw, App. to Pet. for Cert. 223a. Compounding Mu-­nanka’s and Ingen-Housz’s inaction, no other Sullivan & Cromwell lawyer entered an appearance on Maples’ behalf, moved to substitute counsel, or otherwise notified the court of any change in Maples’ representation. Ibid.
Another nine months passed. During this time period, no Sullivan & Cromwell attorneys assigned to Maples’ case sought admission to the Alabama Bar, entered appearances *276 on Maples’ behalf, or otherwise advised the Alabama court that Munanka and Ingen-Housz were no longer Maples’ at­torneys. Thus, Munanka and Ingen-Housz (along with But­ler) remained Maples’ listed, and only, “attorneys of rec­ord.” Ibid.
There things stood when, in May 2003, the trial court, without holding a hearing, entered an order denying Maples’ Rule 32 petition. App. 146-225.[5] The clerk of the Alabama trial court mailed copies of the order to Maples’ three attor­neys of record. He sent Munanka’s and Ingen-Housz’s cop­ies to Sullivan & Cromwell’s New York address, which the pair had provided upon entering their appearances.
When those copies arrived at Sullivan & Cromwell, Munanka and Ingen-Housz had long since departed. The notices, however, were not forwarded to another Sullivan & Cromwell attorney. Instead, a mailroom employee sent the unopened envelopes back to the court. “Returned to Sender — Attempted, Unknown” was stamped on the enve­lope addressed to Munanka. App. to Reply to Brief in Op­position 8a. A similar stamp appeared on the envelope addressed to Ingen-Housz, along with the handwritten nota­tion “Return to Sender — Left Firm.” Id., at 7a.
Upon receiving back the unopened envelopes he had mailed to Munanka and Ingen-Housz, the Alabama court clerk took no further action. In particular, the clerk did not contact Munanka or Ingen-Housz at the personal telephone numbers or home addresses they had provided in their pro hac vice applications. See Ingen-Housz Verified Application for Admission To Practice Under Rule VII, p. 1; and Mu-­nanka Verified Application for Admission To Practice Under Rule VII, p. 1, in Maples v. State, No. CC-95-842.60 (C. C. Morgan Cty., Ala.). Nor did the clerk alert Sullivan & *277 Cromwell or Butler. Butler received his copy of the order, but did not act on it. App. to Pet. for Cert. 256a. He as­sumed that Munanka and Ingen-Housz, who had been “CC’d” on the order, would take care of filing an appeal. Ibid.
Meanwhile, the clock ticked on Maples’ appeal. Under Al­abama’s Rules of Appellate Procedure, Maples had 42 days to file a notice of appeal from the trial court’s May 22, 2003 order denying Maples’ petition for postconviction relief. Rule 4(a)(1) (2000). No appeal notice was filed, and the time allowed for filing expired on July 7, 2003.
A little over a month later, on August 13, 2003, Alabama Assistant Attorney General Jon Hayden, the attorney repre­senting the State in Maples’ collateral review proceedings, sent a letter directly to Maples. App. to Pet. for Cert. 253a-­254a. Hayden’s letter informed Maples of the missed dead­line for initiating an appeal within the State’s system, and notified him that four weeks remained during which he could file a federal habeas petition. Ibid. Hayden mailed the let­ter to Maples only, using his prison address. Ibid. No copy was sent to Maples’ attorneys of record, or to anyone else acting on Maples’ behalf. Ibid.
Upon receiving the State’s letter, Maples immediately con­tacted his mother. Id., at 258a. She telephoned Sullivan & Cromwell to inquire about her son’s case. Ibid. Prompted by her call, Sullivan & Cromwell attorneys Marc De Leeuw, Felice Duffy, and Kathy Brewer submitted a motion, through Butler, asking the trial court to reissue its order denying Maples’ Rule 32 petition, thereby restarting the 42-day ap­peal period. Id., at 222a.
The trial court denied the motion, id., at 222a-225a, noting that Munanka and Ingen-Housz had not withdrawn from the case and, consequently, were “still attorneys of record for the petitioner,” id., at 223a. Furthermore, the court added, attorneys De Leeuw, Duffy, and Brewer had not “yet been admitted to practice in Alabama” or “entered appearances as attorneys of record.” Ibid. “How,” the court asked, “can *278 a Circuit Clerk in Decatur, Alabama know what is going on in a law firm in New York, New York?” Id., at 223a-224a. Declining to blame the clerk for the missed notice of appeal deadline, the court said it was “unwilling to enter into sub­terfuge in order to gloss over mistakes made by counsel for the petitioner.” Ibid.
Maples next petitioned the Alabama Court of Criminal Ap­peals for a writ of mandamus, granting him leave to file an out-of-time appeal. Rejecting Maples’ plea, the Court of Criminal Appeals determined that, although the clerk had “assumed a duty to notify the parties of the resolution of Maples’s Rule 32 petition,” the clerk had satisfied that obli­gation by sending notices to the attorneys of record at the addresses those attorneys provided. Id., at 234a-235a. Butler’s receipt of the order, the court observed, sufficed to notify all attorneys “in light of their apparent co-counsel status.” Id., at 235a-236a (quoting Thomas v. Kellett, 489 So. 2d 554, 555 (Ala. 1986)). The Alabama Supreme Court summarily affirmed the Court of Criminal Appeals’ judg­ment, App. to Pet. for Cert. 237a, and this Court denied cer-­tiorari, Maples v. Alabama, 543 U. S. 1148 (2005).
Having exhausted his state postconviction remedies, Maples sought federal habeas corpus relief. Addressing the ineffective-assistanee-of-trial-eounsel claims Maples stated in his federal petition, the State urged that Maples had for­ever forfeited those claims. Maples did, indeed, present the claims in his state postconviction (Rule 32) petition, the State observed, but he did not timely appeal from the trial court’s denial of his petition. That procedural default, the State maintained, precluded federal-court consideration of the claims.[6] Maples replied that the default should be *279 excused, because he missed the appeal deadline “through no fault of his own.” App. 262 (internal quotation marks omitted).
The District Court determined that Maples had defaulted his ineffective-assistance claims, and that he had not shown “cause” sufficient to overcome the default. App. to Pet. for Cert. 49a-55a. The court understood Maples to argue that errors committed by his postconviction counsel, not any lapse on the part of the court clerk in Alabama, provided the req­uisite “cause” to excuse his failure to meet Alabama’s 42-­day s-to-appeal Rule. Id., at 55a. Such an argument was inadmissible, the court ruled, because this Court, in Coleman v. Thompson, 501 U. S. 722 (1991), had held that the ineffec­tiveness of postconviction appellate counsel could not qualify as cause. App. to Pet. for Cert. 55a (citing Coleman, 501 U. S., at 751).
A divided panel of the Eleventh Circuit affirmed. Maples v. Allen, 586 F. 3d 879 (2009) (per curiam). In accord with the District Court, the Court of Appeals’ majority held that Maples defaulted his ineffective-assistance claims in state court by failing to file a timely notice of appeal, id., at 890, and that Coleman rendered Maples’ assertion of “cause” un­acceptable, 586 F. 3d, at 891.
Judge Barkett dissented. Id., at 895-898. She concluded that the Alabama Court of Criminal Appeals had acted “arbi­trarily” in refusing to grant Maples’ request for an out-of-­time appeal. Id., at 896. In a case involving “indistinguish­able facts,” Judge Barkett noted, the Alabama appellate court had allowed the petitioner to file a late appeal. Ibid. (citing Marshall v. State, 884 So. 2d 898, 899 (Ala. Crim. App. 2002)). Inconsistent application of the 42-days-to-appeal rule, Judge Barkett said, “rendered] the rule an inadequate ground on which to bar federal review of Maples’s claims.” 586 F. 3d, at 897. The interests of justice, she added, re­quired review of Maples’ claims in view of the exceptional circumstances and high stakes involved, and the absence of any fault on Maples’ part. Ibid.
*280 We granted certiorari to decide whether the uncommon facts presented here establish cause adequate to excuse Ma­ples’ procedural default. 562 U. S. 1286 (2011).
I — I I — l
A
As a rule, a state prisoner’s habeas claims may not be en­tertained by a federal court “when (1) ⅛ state court [has] declined to address [those] claims because the prisoner had failed to meet a state procedural requirement/ and (2) ‘the state judgment rests on independent and adequate state pro­cedural grounds.’” Walker v. Martin, 562 U. S. 307, 316 (2011) (quoting Coleman, 501 U. S., at 729-730). The bar to federal review may be lifted, however, if “the prisoner can demonstrate cause for the [procedural] default [in state court] and actual prejudice as a result of the alleged violation of federal law.” Id., at 750; see Wainwright v. Sykes, 433 U. S. 72, 84-85 (1977).
Given the single issue on which we granted review, we will assume, for purposes of this decision, that the Ala­bama Court of Criminal Appeals’ refusal to consider Maples’ ineffective-assistance claims rested on an independent and adequate state procedural ground: namely, Maples’ failure to satisfy Alabama’s Rule requiring a notice of appeal to be filed within 42 days from the trial court’s final order. Accord­ingly, we confine our consideration to the question whether Maples has shown cause to excuse the missed notice of ap­peal deadline.
Cause for a procedural default exists where “something external to the petitioner, something that cannot fairly be attributed to him[,] . . . ‘impeded [his] efforts to comply with the State’s procedural rule.’ ” Coleman, 501 U. S., at 753 (quoting Murray v. Carrier, All U. S. 478, 488 (1986); empha­sis in original). Negligence on the part of a prisoner’s post-­conviction attorney does not qualify as “cause.” Coleman, 501 U. S., at 753. That is so, we reasoned in Coleman, be­cause the attorney is the prisoner’s agent, and under “well-­ *281 settled principles of agency law,” the principal bears the risk of negligent conduct on the part of his agent. Id., at 753-­754. See also Irwin v. Department of Veterans Affairs, 498 U. S. 89, 92 (1990) (“Under our system of representative litigation, ‘each party is deémed bound by the acts of his lawyer-agent.’ ” (quoting Link v. Wabash R. Co., 370 U. S. 626, 634 (1962))). Thus, when a petitioner’s postconviction at­torney misses a filing deadline, the petitioner is bound by the oversight and cannot rely on it to establish cause. Coleman, 501 U. S., at 753-754. We do not disturb that general rule.
A markedly different situation is presented, however, when an attorney abandons his client without notice, and thereby occasions the default. Having severed the principal-agent relationship, an attorney no longer acts, or fails to act, as the client’s representative. See 1 Restate­ment (Third) of Law Governing Lawyers § 31, Comment / (1998) (“Withdrawal, whether proper or improper, termi­nates the lawyer’s authority to act for the client.”). His acts or omissions therefore “cannot fairly be attributed to [the client].” Coleman, 501 U. S., at 753. See, e. g., Jamison v. Lockhart, 975 F. 2d 1377, 1380 (CA8 1992) (attorney conduct may.provide cause to excuse a state procedural default where, as a result of a conflict of interest, the attorney “ceased to be [petitioner’s] agent”); Porter v. State, 339 Ark. 15, 16-19, 2 S. W. 3d 73, 74-76 (1999) (finding “good cause” for petitioner’s failure to file a timely habeas petition where the petitioner’s attorney terminated his representation with­out notifying petitioner and without taking “any formal steps to withdraw as the attorney of record”).
Our recent decision in Holland v. Florida, 560 U. S. 631 (2010), is instructive. That case involved a missed one-year deadline, prescribed by 28 U. S. C. § 2244(d), for filing a fed­eral habeas petition. Holland presented two issues: first, whether the § 2244(d) time limitation can be tolled for equi­table reasons, and, second, whether an attorney’s unpro­fessional conduct can ever count as an “extraordinary circumstance” justifying equitable tolling. 560 U. S., at 649, *282 651 (internal quotation marks omitted). We answered yes to both questions.
On the second issue, the Court recognized that an attor­ney’s negligence, for example, miscalculating a filing dead­line, does not provide a basis for tolling a statutory time limit. Id., at 651-652; id., at 656 (Alito, J., concurring in part and concurring in judgment); see Lawrence v. Florida, 549 U. S. 327, 336 (2007). The Holland petitioner, however, urged that attorney negligence was not the gravamen of his complaint. Rather, he asserted that his lawyer had de­tached himself from any trust relationship with his client: “[My lawyer] has abandoned me,” the petitioner complained to the court. 560 U. S., at 637 (brackets and internal quota­tion marks omitted); see Nara v. Frank, 264 F. 3d 310, 320 (CA3 2001) (ordering a hearing on whether a client’s effective abandonment by his lawyer merited tolling of the one-year deadline for filing a federal habeas petition).
In a concurring opinion in Holland, Justice Alito homed in on the essential difference between a claim of attorney error, however egregious, and a claim that an attorney had essentially abandoned his client. 560 U. S., at 659. Hol­land’s plea fit the latter category: He alleged abandonment “evidenced by counsel’s near-total failure to communicate with petitioner or to respond to petitioner’s many inquiries and requests over a period of several years.” Ibid.; see id., at 636-637, 652 (majority opinion). If true, Justice Alito explained, “petitioner’s allegations would suffice to establish extraordinary circumstances beyond his eontrol[:] Common sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operat­ing as his agent in any meaningful sense of that word.” Id., at 659.[7]
*283 We agree that, under agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him. Nor can a client be faulted for failing to act on his own behalf when he lacks reason to believe his attor­neys of record, in fact, are not representing him. We there­fore inquire whether Maples has shown that his attorneys of record abandoned him, thereby supplying the “extraordinary circumstances beyond his control,” ibid., necessary to lift the state procedural bar to his federal petition.
B
From the time he filed his initial Rule 32 petition until well after time ran out for appealing the trial court’s denial of that petition, Maples had only three attorneys of record: Munanka, Ingen-Housz, and Butler. Unknown to Maples, not one of these lawyers was in fact serving as his attorney during the 42 days permitted for an appeal from the trial court’s order.
1
The State contends that Sullivan & Cromwell represented Maples throughout his state postconviction proceedings. Accordingly, the State urges, Maples cannot establish aban­donment by counsel continuing through the six weeks al­lowed for noticing an appeal from the trial court’s denial of his Rule 32 petition. We disagree. It is undisputed that Munanka and Ingen-Housz severed their agency relationship with Maples long before the default occurred. See Brief for Respondent 47 (conceding that the two attorneys erred in failing to file motions to withdraw from the case). Both Mu-­nanka and Ingen-Housz left Sullivan & Cromwell’s employ in the summer of 2002, at least nine months before the Alabama trial court entered its order denying Rule 32 relief. App. to Pet. for Cert. 258a. Their new employment — Munanka as a *284 law clerk for a federal judge, Ingen-Housz as an employee of the European Commission in Belgium — disabled them from continuing to represent Maples. See Code of Conduct for Judicial Employees, Canon 4(D)(3) (1999) (prohibiting judicial employees from participating in “litigation against federal, state or local government”); European Commission, Staff Regulations of Officials of the European Communities, Tit. I, Art. 12b (2004) (employees cannot perform outside work without first obtaining authorization from the Commission), available at http://ec.europa.eu/civil_service/docs/toclOO_ en.pdf (as visited Jan. 13, 2012, and in Clerk of Court’s case file). Hornbook agency law establishes that the attorneys’ departure from Sullivan & Cromwell and their commence­ment of employment that prevented them from representing Maples ended their agency relationship with him. See 1 Re­statement (Second) of Agency § 112 (1957) (hereinafter Re­statement (Second)) (“[T]he authority of an agent terminates if, without knowledge of the principal, he acquires adverse interests or if he is otherwise guilty of a serious breach of loyalty to the principal.”); 2 id., §394, Comment a (“[Tjhe agent commits a breach of duty [of loyalty] to his principal by acting for another in an undertaking which has a substantial tendency to cause him to disregard his duty to serve his principal with only his principal’s purposes in mind.”).
Furthermore, the two attorneys did not observe Ala­bama’s Rule requiring them to seek the trial court’s permis­sion to withdraw. See Ala. Rule Crim. Proc. 6.2, Comment. Cf. 1 Restatement (Second) § 111, Comment b (“[I]t is ordi­narily inferred that a principal does not intend an agent to do an illegal act.”). By failing to seek permission to withdraw, Munanka and Ingen-Housz allowed the court’s records to convey that they represented Maples. As listed attorneys of record, they, not Maples, would be the addressees of court orders Alabama law requires the clerk to furnish. See Ala. Rule Crim. Proc. 34.5 (“Upon the entry of any order in a criminal proceeding made in response to a motion, . . . the *285 clerk shall, without undue delay, furnish all parties a copy thereof by mail or by other appropriate means.”) and 34.4 (“[W]here the defendant is represented by counsel, service shall be made upon the attorney of record.”).
Although acknowledging that Munanka and Ingen-Housz severed their agency relationship with Maples upon their departure from Sullivan & Cromwell, the State argues that, nonetheless, Maples was not abandoned. Other attorneys at the firm, the State asserts, continued to serve as Maples’ counsel. Regarding this assertion, we note, first, that the record is cloudy on the role other Sullivan & Cromwell attor­neys played. In an affidavit submitted to the Alabama trial court in support of Maples’ request that the court reissue its Rule 32 order, see supra, at 277, partner Marc De Leeuw stated that he had been “involved in [Maples’] case since the summer of 2001.” App. to Pet. for Cert. 257a. After the trial court initially denied the State’s motion to dismiss in December 2001, De Leeuw informed the court, Sullivan & Cromwell “lawyers working on this case for Mr. Maples pre­pared for [an anticipated] evidentiary hearing.” Id., at 258a. Another Sullivan & Cromwell attorney, Felice Duffy, stated, in an affidavit submitted to the Alabama trial court in Sep­tember 2003, that she “ha[d] worked on [Maples’] case since October 14, 2002.” App. 231. But neither De Leeuw nor Duffy described what their “involve[ment]” or “wor[k] on [Maples’] case” entailed. And neither attorney named the lawyers, other than Munanka and Ingen-Housz (both of them still with Sullivan & Cromwell in December 2001), engaged in preparation for the expected hearing. Nor did De Leeuw identify the specific work, if any, other lawyers performed on Maples’ case between Munanka’s and Ingen-Housz’s depar­tures and the firm’s receipt of the telephone call from Ma­ples’ mother.[8]
*286 The slim record on activity at Sullivan & Cromwell, how­ever, does not warrant a remand to determine more precisely the work done by firm lawyers other than Munanka and Ingen-Housz. For the facts essential to our decision are not in doubt. At the time of the default, the Sullivan & Crom­well attorneys who later came forward — De Leeuw, Duffy, and Kathy Brewer — had not been admitted to practice law in Alabama, had not entered their appearances on Maples’ behalf, and had done nothing to inform the Alabama court that they wished to substitute for Munanka and Ingen-­Housz. Thus, none of these attorneys had the legal author­ity to act on Maples’ behalf before his time to appeal expired. Cf. 1 Restatement (Second) § 111 (The “failure to acquire a qualification by the agent without which it is illegal to do an authorized act... terminates the agent’s authority to act.”).[9] *287 What they did or did not do in their New York offices is therefore beside the point. At the time critical to preserv­ing Maples’ access to an appeal, they, like Munanka and Ingen-Housz, were not Maples’ authorized agents.
2
Maples’ only other attorney of record, local counsel Butler, also left him abandoned. Indeed, Butler did not even begin to represent Maples. Butler informed Munanka and Ingen-­Housz that he would serve as local counsel only for the pur­pose of enabling the two out-of-state attorneys to appear pro hac vice. Supra, at 274. Lacking the necessary “resources, available time [and] experience,” Butler told the two Sulli­van & Cromwell lawyers, he would not “deal with substantive issues in the case.” Ibid. That the minimal participation he undertook was inconsistent with Alabama law, see Rule VII, quoted supra, at 274, underscores the absurdity of holding Maples barred because Butler signed on as local counsel.
In recognizing that Butler had no role in the case other than to allow Munanka and Ingen-Housz to appear pro hac vice, we need not rely solely on Butler’s and De Leeuw’s statements to that effect. App. to Pet. for Cert. 255a-258a. Other factors confirm that Butler did not “operat[e] as [Maples’] agent in any meaningful sense of that word.” Hol­land, 560 U. S., at 659 (Alito, J., concurring in part and con­curring in judgment). The first is Butler’s own conduct. Upon receiving a copy of the trial court’s Rule 32 order, But­ler did not contact Sullivan & Cromwell to ensure that firm lawyers were taking appropriate action. Although Butler had reason to believe that Munanka and Ingen-Housz had received a copy of the court’s order, see App. 225 (indicating that Munanka and Ingen-Housz were CC’d on the order), Butler’s failure even to place a phone call to the New York firm substantiates his disclaimer of any genuinely repre­sentative role in the case.
Notably, the State did not treat Butler as Maples’ actual representative. Assistant Attorney General Hayden ad­ *288 dressed the letter informing Maples of the default directly to Maples in prison. See supra, at 277. Hayden sent no copy to, nor did he otherwise notify, any of the attorneys listed as counsel of record for Maples. Lawyers in Alabama have an ethical obligation to refrain from communicating di­rectly with an opposing party known to be represented by counsel. See Ala. Rule of Professional Conduct 4.2 (2003); Ala. Rule Crim. Proc. 34.4 (requiring that the service of all documents “be made upon the attorney of record”)- In writ­ing directly and only to Maples, notwithstanding this ethical obligation, Assistant Attorney General Hayden must have believed that Maples was no longer represented by counsel, out-of-state or local.[10]
In sum, the record admits of only one reading: At no time before the missed deadline was Butler serving as Maples’ agent “in any meaningful sense of that word.” Holland, 560 U. S., at 659 (opinion of Alito, J.).
3
Not only was Maples left without any functioning attorney of record, the very listing of Munanka, Ingen-Housz, and Butler as his representatives meant that he had no right per­sonally to receive notice. See supra, at 284-285. He in fact received none or any other warning that he had better fend for himself. Had counsel of record or the State’s attorney *289 informed Maples of his plight before the time to appeal ran out, he could have filed a notice of appeal himself[11] or en­listed the aid of new volunteer attorneys.[12] Given no reason to, suspect that he lacked counsel able and willing to repre­sent him, Maples surely was blocked from complying with the State’s procedural rule.
C
“The cause and prejudice requirement,” we have said, “shows due regard for States’ finality and comity interests while ensuring that ‘fundamental fairness [remains] the cen­tral concern of the writ of habeas corpus.’” Dretke v. Haley, 541 U. S. 386, 393 (2004) (quoting Strickland v. Wash­ington, 466 U. S. 668, 697 (1984)). In the unusual circum­stances of this case, principles of agency law and fundamen­tal fairness point to the same conclusion: There was indeed cause to excuse Maples’ procedural default. Through no fault of his own, Maples lacked the assistance of any author­ized attorney during the 42 days Alabama allows for noticing an appeal from a trial court’s denial of postconviction relief. As just observed, he had no reason to suspect that, in reality, he had been reduced to pro se status. Maples was disarmed by extraordinary circumstances quite beyond his control. He has shown ample cause, we hold, to excuse the procedural default into which he was trapped when counsel of record abandoned him without a word of warning.
*290 I­II
Having found no cause to excuse the failure to file a timely notice of appeal in state court, the District Court and the Eleventh Circuit did not reach the question of prejudice. See supra, at 279. That issue, therefore, remains open for decision on remand.
* * *
For the reasons stated, the judgment of the Court of Ap­peals for the Eleventh Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

 One study of federal capital trials from 1990 to 1997 found that de­fense attorneys spent an average of 1,480 out-of-court hours preparing a defendant’s ease. Subcommittee on Federal Death Penalty Cases, Com­mittee on Defender Services, Judicial Conference of the United States, Federal Death Penalty Cases: Recommendations Concerning the Cost and Quality of Defense Representation 14 (May 1998).

 In 1999, the State removed the cap on fees for out-of-court work in capital cases. Ala. Code § 15-12-21(d) (2010 Cum. Supp.). Perhaps not coincidentally, 70% of the inmates on Alabama’s death row in 2006, includ­ing Maples, had been convicted when the $1,000 cap was in effect. ABA Report 126.

 In 2006, Alabama revised Rule VII. See Rule Governing Admission to the Ala. State Bar VII (2009). Under the new rule, the State allows out-of-state counsel to represent pro bono indigent criminal defendants in postconviction proceedings without involvement of local counsel. Ibid.

 Originally filed in August 2001, the petition was resubmitted, with only minor alterations, in December 2001. See App. 22-24, 28-142.

 One of Maples’ attorneys observed, without contradiction, that the trial court’s order was a “word for word copy of the proposed Order that the State had submitted [with] its [December 2001] Motion to Dismiss.” Id., at 300.

 In opposing Maples’ request for an out-of-time appeal, the State argued to the Alabama Supreme Court that such an appeal was unwarranted. In that context, the State noted that Maples “may still present his postcon-­viction claims to [the federal habeas] court.” 35 Record, Doc. No. 55, p. 22, n. 4. The State’s current position is in some tension with that observation.

Holland v. Florida, 560 U. S. 631 (2010), involved tolling of a federal time bar, while Coleman v. Thompson, 501 U. S. 722 (1991), concerned cause for excusing a procedural default in state court. See Holland, 560 U. S., at 650-651. We see no reason, however, why the distinction be­ *283 tween attorney negligence and attorney abandonment should not hold in both contexts.

 The unclear state of the record is perhaps not surprising, given Sulli­van & Cromwell’s representation of Maples after the default. As amici for Maples explain, a significant conflict of interest arose for the firm once *286 the crucial deadline passed. Brief for Legal Ethics Professors et al. as Amici Curiae 23-27. Following the default, the firm’s interest in avoid­ing damage to its own reputation was at odds with Maples’ strongest argument — i. e., that his attorneys had abandoned him, therefore he had cause to be relieved from the default. Yet Sullivan & Cromwell did not cede Maples’ representation to a new attorney, who could have made Ma­ples’ abandonment argument plain to the Court of Appeals. Instead, the firm represented Maples through briefing and oral argument in the Elev­enth Circuit, where they attempted to cast responsibility for the mishap on the clerk of the Alabama trial court. Given Sullivan & Cromwell’s conflict of interest, Maples’ federal habeas petition, prepared and submit­ted by the firm, is not persuasive evidence that Maples, prior to the de­fault, ever “viewed himself” as represented by “the firm,” see post, at 295 (Scalia, J., dissenting), rather than by his attorneys of record, Munanka and Ingen-Housz.

 The dissent argues that the Sullivan & Cromwell attorneys had no basis “to infer that Maples no longer wanted them to represent him, sim­ply because they had not yet qualified before the Alabama court.” Post, at 297. While that may be true, it is irrelevant. What the attorneys could have inferred is that Maples would not have wanted them to file a notice of appeal on his behalf prior to their admission to practice in Ala­bama, for doing so would be “illegal,” ibid, (internal quotation marks omitted). See also 1 Restatement (Second) §111, Comment b, quoted supra, at 284. For the critical purpose of filing a notice of appeal, then, the other Sullivan & Cromwell attorneys had no authority to act for Maples.

 It bears note, as well, that the State served its response to Maples’ Rule 32 petition only on Munanka at Sullivan & Cromwell’s New York address, not on Butler. App. 26. While the State may not be obligated to serve more than one attorney of record, its selection of New York rather than local counsel is some indication that, from the start, the State was cognizant of the limited role Butler would serve. Conforming the State’s Rule to common practice, in 2006, the Alabama Supreme Court amended the provision on appearances by out-of-state counsel to eliminate the re­quirement that such attorneys associate local counsel when representing indigent criminal defendants pro bono in postconviction proceedings. See supra, at 274, n. 3.

 The notice is a simple document. It need specify only: the party tak­ing the appeal, the order or judgment appealed from, and the name of the court to which appeal is taken. Ala. Rule App. Proc. 3(c) (2000).

 Alabama grants out-of-time appeals to prisoners proceeding pro se who were not timely served with copies of court orders. See Maples v. Allen, 586 F. 3d 879, 888, and n. 6 (CA11 2009) (per curiam) (citing Ex parte Miles, 841 So. 2d 242, 243 (Ala. 2002), and Ex parte Robinson, 865 So. 2d 1250,1251-1252 (Ala. Crim. App. 2003) (per curiam)). Though Maples was not a pro se petitioner on the record, he was, in fact, without authorized counsel.