*1275 BARKETT, Circuit Judge,
dissenting:
For the reasons articulated in my concurring opinion in Hutchinson v. Florida, 677 F.3d 1097 (11th Cir.2012) (Barkett, J., concurring in result only), I believe that it is unjust and inequitable to require death row inmates to suffer the consequences of their attorneys’ negligence by denying them equitable tolling. Here, although I agree with the majority that Smith is not entitled to statutory tolling of the federal habeas filing deadline, I believe that Smith has alleged sufficient facts regarding both Johnson’s and Massey’s conduct that, if true, merit the finding of extraordinary circumstances for equitable tolling. At the minimum, Smith should be afforded an evidentiary hearing to determine if his attorneys abandoned him or engaged in egregious attorney misconduct sufficient to warrant equitable relief.
Although the majority declines to decide whether Smith was diligent in pursuing his rights, I believe that Smith’s allegations, if proven true, would be sufficient to establish diligence for purposes of equitable tolling. Smith alleges that as soon as his direct appeal concluded he persistently attempted to obtain pro bono counsel through the Equal Justice Initiative for his state and federal post-conviction proceedings and was reassured that they would find him a lawyer and that his deadlines would not be missed. He alleges that once he was advised that Massey had agreed to represent him, he was again reassured that his state and federal petitions would be timely filed. Smith then alleges that he received a date-stamped copy of his Rule 32 Petition with the state court clerk’s date-stamp of September 27, 2001. Smith argues that he reasonably assumed that this cover page was confirmation that his Rule 32 Petition had been timely filed on September 27, 2001 — the date that was stamped by the court on the caption page. He further alleges that he had no reason to suspect that he was not being represented by competent counsel or that his counsel had failed to pay the required filing fee or submit the in forma pauperis motion with his Rule 32 Petition. He alleges that he did not discover for some time that Massey had never been properly admitted to represent him in Alabama by failing to move for pro hac vice admission; that Johnson was struggling with personally and professionally crippling problems due to his drug addiction;[1] or that Johnson withdrew from his case and had a trustee appointed to protect the interests of his clients as of November 26, 2001, at which time he still did not have a properly filed Rule 32 Petition.[2] Moreover, once the filing fee had been paid in a timely manner under the state rules, the state court proceeded to adjudicate the merits of Smith’s Rule 32 Petition. When Smith’s state court post-conviction proceedings eventually concluded upon the Alabama Supreme Court’s denial of Smith’s petition for writ of certiorari on July 15, 2005, Smith immediately, on July 19, 2005, filed his federal habeas petition. Under these circumstances, in which Smith has alleged that all of the information provided to him indicated that he had competent legal representation and that his state and federal filing deadlines had been met, I would find that reasonable diligence did not require him to make any additional inquiries as to whether his Rule 32 Petition had been properly *1276 filed in order to toll his federal habeas limitation period.[3]
Moreover, Smith also demonstrated that extraordinary circumstances prevented the timely filing of his federal habeas petition, which contrary to the majority opinion, I believe Smith has adequately alleged. Although Johnson’s and Massey’s failure to pay the appropriate filing fee by itself would not suffice to establish an extraordinary circumstance for equitable tolling, see Maples v. Thomas, — U.S. -, 132 S.Ct. 912, 922, 181 L.Ed.2d 807 (2012), I believe that Smith has adequately alleged that all of the circumstances surrounding both of his attorneys’ conduct constituted “far more than [a] ‘garden variety[1] [claim of attorney negligence] or ‘excusable neglect,’ ” Holland v. Florida, — U.S. -, 130 S.Ct. 2549, 2564, 177 L.Ed.2d 130 (2010). Johnson’s substantial professional and personal problems stemming from his long and ongoing history of drug addiction and Massey’s failure to obtain pro hac vice status in Alabama constituted abandonment or at a minimum, a gross breach of professional conduct sufficient to establish extraordinary circumstances for equitable tolling.
From the beginning of his so-called representation of Smith, Johnson was on probation for a public intoxication conviction and was actively abusing prescription drugs and crystal methamphetamine. Reportedly, he often came to his office in a state of intoxication and on occasion had to be retrieved from his home by his office staff in order to attend court hearings. From time to time, he also had to call on other attorneys to assist him in handling his cases. A few months after taking on Smith’s case, Johnson was charged with nine counts of possession for a controlled substance after prison officials, at a state prison where Johnson was visiting a client, noticed Johnson’s dog had been left locked in his car and upon opening the car, discovered a bag filled with prescription drugs and crystal methamphetamine. Soon thereafter the Alabama State Bar placed Johnson on disability inactive status and appointed a trustee to take over his cases. In addition to his severe drug addiction, Johnson had his own personal bankruptcy litigation to contend with during the time he was supposed to be representing Smith. And about one year after Johnson took on Smith’s case, he committed suicide.
These allegations are sufficient to show an egregious breach of Johnson’s professional ethical obligations to Smith, which, I believe, constitute the sort of extraordinary circumstances that merit equitable relief under Holland and Maples. Johnson’s alleged conduct was comparably egregious to the violations of the “fundamental canons of professional responsibility,” that the Court in Holland suggested could constitute “extraordinary circumstances.” 130 S.Ct. at 2564; see also Model Rules of Profl Conduct R. 1.16(a)(2) (2009) (stating that an attorney must withdraw from representation if the “lawyer’s physical or mental condition materially impairs the lawyer’s ability to represent the client.”); Robertson v. Simpson, 624 F.3d 781, 784 (6th Cir.2010) (concluding that, under Holland, an attorney’s misadviee about a deadline due to cocaine use might constitute an extraordinary circumstance). At the minimum, the district court should have granted Smith an evidentiary hearing to allow him to develop the full factual basis of his claim for equitable tolling.
*1277 Moreover, I believe that Massey’s failure to obtain pro hac vice status in Alabama, when considered in conjunction with Johnson’s inability to competently represent Smith, is sufficient to constitute abandonment under Maples. Although Massey agreed to represent Smith, he never sought admission under Alabama’s mandatory pro hac vice rules and therefore was never authorized to represent Smith in the Alabama state court proceedings. See Black v. Baptist Med. Ctr., 575 So.2d 1087, 1088 (Ala.1991) (holding that a pleading filed by an out-of-state attorney who has failed to comply "with Alabama’s mandatory pro hac vice rule, is to be stricken as a “nullity”). Indeed, Smith’s allegations indicate that, other than agreeing to represent Smith and then a year later “withdrawing” from Smith’s case, Massey did very little else. Smith alleges that neither Massey nor Johnson prepared the Rule 32 Petition that was filed in his case; they merely filed, albeit improperly, the Rule 32 Petition that had been prepared by a group of law student interns for the Equal Justice Initiative. Not only did Massey fail to seek admission to practice in Alabama and fail to properly file the already-prepared Rule 32 Petition, but even when he was advised by Johnson’s office in October 2001 that he needed to complete the pro hac vice process and to pay the required filing fee, he did nothing. Indeed, it was not until several months later and only after the assistant attorney general for the state advised Johnson (who was no longer Smith’s attorney due to his disability inactive status) that the state two-year statute of limitations would expire in four days that Massey paid the filing fee. The only other affirmative step that Massey took on behalf of Smith was to find new local counsel and withdraw from representing Smith.
I do not see any material difference between the circumstances surrounding Massey’s inaction and the attorney conduct in Maples, which the Court concluded constituted abandonment. 132 S.Ct. at 927. In Maples, the Court noted that once the out-of-state attorneys of record left their law firm, no other attorneys from the firm had been admitted to practice law in Alabama, entered their notice of appearance on Maples’ behalf, or did anything to indicate that they had the legal authority to act on Maples’ behalf. Id. at 925-26. Under these circumstances, the Court concluded that no matter what work the attorneys may have done in their law office, none of them had the legal authority to act on Maples’ behalf. Id. at 926. The same can be said for Massey’s role in Smith’s case. His failure to obtain pro hac vice status in Alabama, a qualification required to represent Smith in Alabama state court proceedings, rendered him without any legal authority to act on behalf of Smith at the time critical to preserving Smith’s legal rights. And because Johnson was never competent to represent Smith, see Model Rules of Profl Conduct R. 1.16(a)(2) (providing that an attorney must withdraw from representing a client if “the lawyer’s physical or mental condition materially impairs the lawyer’s ability to represent the client”), neither Massey nor Johnson ever meaningfully functioned as Smith’s attorneys.

. The district court noted that Smith was unaware that Johnson had a severe drug addiction "which resulted in his suspension by the Alabama Bar within three months of the filing [of the September 27, 2001] Rule 32 petition and [his] eventual suicide.”

. Smith also alleges that, Patricia Lackey, the court appointed trustee of Johnson’s affairs, was unaware that Smith was a death penalty client when she began making inquiries to obtain Smith’s contact information.

. The district court's determination to the contrary that Smith's allegations demonstrate "complete inaction” and "cannot rise to the level of due diligence” because he “never expressed concern over the running of the AEDPA statute of limitations to either his counsel or the state court system” is thus clearly erroneous.