# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 15-70027

———————

United States Court of Appeals
Fifth Circuit

**FILED**

July 20, 2017

Lyle W. Cayce
Clerk

TODD WESSINGER,

> Petitioner - Appellee Cross-Appellant

v.

DARREL VANNOY, WARDEN, LOUISIANA STATE PENITENTIARY,

> Respondent - Appellant Cross-Appellee

———————

Appeals from the United States District Court
for the Middle District of Louisiana

———————

Before DENNIS, CLEMENT, and OWEN, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

The district court granted Todd Kelvin Wessinger's second amended petition for habeas corpus as to his claim for ineffective assistance of trial counsel at the penalty phase, vacating his death sentences and remanding the matter to state court for a new penalty phase trial. We REVERSE the district court's grant of habeas relief.

I

On November 19, 1995, Wessinger shot and killed Stephanie Guzzardo and David Breakwell while robbing Calendar's Restaurant in Baton Rouge, Louisiana. He also shot David Armentor twice in the back and attempted to shoot Alvin Ricks. Armentor survived his wounds, and Ricks was able to escape

after Wessinger's gun would not fire. Wessinger stole approximately $7,000 and then fled the scene.

A jury convicted Wessinger of two counts of capital murder. The State presented the testimony of Armentor and Ricks, as well as that of four after-the-fact witnesses. Witnesses testified that Wessinger asked a friend to commit the robbery with him, that he confessed to committing the crime, and that he had large amounts of money after the robbery. The State also presented evidence that the murder weapon and a pair of gloves worn during the crime were discovered at an abandoned house across the street from Wessinger's residence. A witness testified that Wessinger asked him to take the murder weapon from the abandoned house.

During the penalty phase of the trial, Wessinger's counsel presented multiple character witnesses and two experts. The jury sentenced Wessinger to death. Wessinger appealed his conviction and sentence, but the Louisiana Supreme Court affirmed both on direct appeal. The United States Supreme Court denied certiorari, *Wessinger v. Louisiana*, 528 U.S. 1050 (1999), as well as Wessinger's application for rehearing. *Wessinger v. Louisiana*, 528 U.S. 1145 (2000).

After Wessinger's first pro bono post-conviction counsel withdrew, the Louisiana Supreme Court appointed Soren Gisleson as pro bono post-conviction counsel. Before his formal appointment, Gisleson filed a three-page "shell" petition for post-conviction relief to toll the one-year statute of limitations. The state post-conviction court gave Gisleson a 60-day extension to file an amended petition.

Gisleson moved for "funding for any and all types of investigation." While the motion for funds was pending, he asked the Louisiana Indigent Defense Assistance Board ("LIDAB"), the Louisiana Crisis Assistance Center ("LCAC"), the East Baton Rouge Indigent Defense Board, and the Capital Post-

No. 15-70027

Conviction Project of Louisiana ("CPCPL") for funding or assistance, but the organizations all denied his requests. CPCPL referred him to mitigation specialist Deanne Sandel. Sandel provided Gisleson with an affidavit regarding the time, ethical obligations, investigation, and assistance needed to represent Wessinger in the state post-conviction proceedings.

The state post-conviction court denied his motion for funds. Gisleson moved to continue the deadline to file the amended petition. Although the state post-conviction court initially denied the motion, it eventually gave him a brief continuance. Gisleson obtained the files of Wessinger's previous counsel, the district attorney, and the police. He spoke with Wessinger's mother and brother "a couple times on the phone." Gisleson also visited and spoke with Wessinger. He determined from the files and from his conversations with Wessinger and his family that Wessinger potentially had a claim for ineffective assistance of trial counsel at the penalty phase.

Gisleson then moved in the Louisiana Supreme Court to withdraw from representing Wessinger. Because the Louisiana Supreme Court did not respond to Gisleson's motion before the filing deadline set by the state post-conviction court, Gisleson drafted and filed Wessinger's first amended petition for post-conviction relief. The first amended petition was 136 pages, not including any attachments. Gisleson modelled the first amended petition on a form template he received from LCAC, and he included "a couple of discrete facts" from "the file or from general conversations with [Wessinger's] mother" as well as from the state court trial record. Gisleson included in Wessinger's first amended petition a claim for ineffective assistance of trial counsel at the penalty phase, among other claims.

The State opposed Wessinger's petition, and Gisleson realized that the Louisiana Supreme Court denied his motion to withdraw. The state post-conviction court referred the matter to a commissioner. While the matter was

3

pending, Gisleson again reached out to various organizations for funding and assistance. He was eventually referred to Danalynn Recer of the Gulf Regional Advocacy Center ("GRAC"), who "offered to provide general assistance for" $5,000.[1] Gisleson secured payment of Recer's fee from his law firm.

The commissioner's report recommended that the state post-conviction court deny Wessinger's first amended petition. With Recer's assistance, Gisleson then filed a second amended petition for post-conviction relief, which was 100 pages long and reflected "[a]ny and all assistance [he] would have received from GRAC, [and] any perceived factual development they would have created and would have assisted and sent to [him]." Among other things, the second amended petition "added some discrete allegations concerning mitigation and [ineffective assistance of counsel] in the [penalty] phase." For example, the second amended petition alleged that Wessinger's trial counsel did not "conduct professional/effective investigation in mitigation" because he failed to "adequately explore [Wessinger's] medical history" or introduce evidence of Wessinger's substance abuse, among other things.

The state post-conviction court dismissed Wessinger's first amended petition as procedurally barred and his second amended petition on the merits. The Louisiana Supreme Court affirmed without reasons the state post-conviction court's denial of relief. Gisleson then filed an application for a writ of habeas corpus in federal district court on behalf of Wessinger, asserting a claim for ineffective assistance of trial counsel at the penalty phase of trial, among other claims.

The district court appointed Gisleson and Recer as federal habeas counsel for Wessinger. Gisleson filed motions for expert funds and for funds for a mitigation specialist, which the district court granted. Wessinger twice

---

[1] Both Recer and Gisleson are listed as counsel in Wessinger's brief before this court.

amended his petition, filing his second amended petition over six years after filing his initial federal habeas petition.

The district court initially denied all claims. Wessinger then moved to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e). The district court granted Wessinger's motion as to Wessinger's claim for ineffective assistance of trial counsel at the penalty phase[2] and subsequently granted habeas relief, holding that penalty phase counsel was ineffective and that Gisleson was ineffective on initial review. The State appealed. Among other things, the State argues that the district court erred in determining that Gisleson's initial-review representation of Wessinger was ineffective.

## II

"In a habeas corpus appeal, we review the district court's findings of fact for clear error and its conclusions of law de novo . . . ." *Lewis v. Thaler*, 701 F.3d 783, 787 (5th Cir. 2012) (quoting *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004)). Whether counsel was ineffective "is a mixed question of law and fact." *Strickland v. Washington*, 466 U.S. 668, 698 (1984).

## III

The State raises several arguments on appeal. Because we conclude that the district court erroneously determined that Gisleson's initial-review representation of Wessinger was deficient, we address only that argument.

To determine whether initial-review counsel was ineffective, we apply the familiar *Strickland* test. *See Newbury v. Stephens*, 756 F.3d 850, 871–72 (5th Cir. 2014) (per curiam) (citing *Strickland*, 466 U.S. at 687). A petitioner

---

[2] The district court denied Wessinger's Rule 59(e) motion as to his claims of ineffective assistance of trial counsel during voir dire, ineffective assistance of trial counsel at the guilt phase, and suppression of material evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). On a separate docket, Wessinger seeks certificates of appealability to appeal the district court's denial of those claims.

seeking to establish ineffective assistance of state habeas counsel must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Id.*

"[T]he performance inquiry [is] whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

As to the prejudice inquiry, the petitioner must show that the "particular errors of counsel [that] were unreasonable . . . actually had an adverse effect on the defense." *Id.* at 693. To demonstrate that state habeas counsel was ineffective, a petitioner must demonstrate that "there is a reasonable probability that he would have been granted state habeas relief" if not for counsel's deficiency. *Newbury*, 756 F.3d at 871–72. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

The district court found that Gisleson's "performance fell below an 'objective standard of reasonableness' by failing to conduct any mitigation investigation, particularly when the underlying claim is one of ineffective assistance of trial counsel at the penalty phase." The district court determined that Gisleson was deficient because he did not "hire a mitigation specialist to do a social history or mitigation investigation," "conduct [his] own mitigation investigation," or "consult any mental health experts or any other experts." The district court relied on the testimony of two experts, who testified that Gisleson "did not perform the thorough mitigation investigation required under

6

professional norms" and that a death penalty team should "include[] two attorneys, . . . a mitigation specialist, and a paralegal."

We hold that the district court erred. "[C]onsidering all the circumstances" and "evaluat[ing] the conduct from [Gisleson's] perspective at the time," as we must, we conclude that Gisleson's performance in raising and developing Wessinger's claim for ineffective assistance of trial counsel at the penalty phase was not deficient. *Strickland*, 466 U.S. at 688–89.

Wessinger argues that his initial-review counsel was deficient because he "fail[ed] to *raise* the claim of ineffective assistance of trial counsel at the penalty phase . . . [that was] raised by Wessinger in federal habeas." But it is clear that Gisleson raised Wessinger's claim for ineffective assistance of trial counsel at the penalty phase during the state post-conviction proceedings. The district court acknowledged that Gisleson "preserved the claim." Gisleson filed two separate amended petitions for post-conviction relief. The second amended petition, on which the state post-conviction court ultimately ruled on the merits, asserted Wessinger's claim for ineffective assistance of trial counsel at the penalty phase and made specific factual allegations, including that trial counsel did not obtain Wessinger's medical records. The second amended petition also alleged, among other things, that: Wessinger had a history of head trauma and childhood seizures; he lost two children; he suffered psychologically when he lost three friends to murder as a teenager or young adult; and his sister had seizures and cerebral palsy.

The district court's decision instead focused on Gisleson's "failure to conduct mitigation investigation [which] prevented him from providing any support" for Wessinger's claim for ineffective assistance of counsel at the penalty phase. We disagree. The state post-conviction court denied Gisleson's motion for funds "for any and all types of investigation." Gisleson also repeatedly reached out to various organizations for funding or assistance, and

he was repeatedly denied. Gisleson did not hire a mitigation specialist or consult experts because the state post-conviction court did not grant his motion for funds, not because of any deficiency on Gisleson's part. He was thorough in his attempt to secure funds or other assistance, and ultimately he managed to secure $5,000 from his firm, which he paid to Recer for her help investigating and filing the second amended petition.

Wessinger previously acknowledged to the district court that he did not develop evidentiary support for his claim during state post-conviction proceedings because of decisions *by the state post-conviction court*, not because Gisleson was deficient. He argued in his initial federal habeas petition that "Wessinger did not fail to develop the factual basis" of his claim in state court but rather that "the state court failed to grant . . . Wessinger a forum to develop the factual record in post-conviction proceedings." Wessinger asserted that he—represented by Gisleson—"diligently requested a hearing on every single claim." According to Wessinger, "[h]e not only requested a hearing, but he also submitted extensive medical records and affidavits that supported the necessity of a hearing in state court to factually develop his claims." Wessinger reasserted this argument in his first amended federal habeas petition, arguing that he "was not allowed to factually develop his claims in state court through no fault of his own." Gisleson "requested a hearing, discovery and funds, all of which were denied."

Even after the evidentiary hearing, Wessinger argued that Gisleson did not develop the claim in state court "because of lack of money, lack of expertise, lack of help, lack of experience and lack of time." Wessinger has not demonstrated that a more experienced attorney would have obtained funding, assistance, or additional time from the state post-conviction court. That Wessinger did not present evidentiary support of his claim to the state post-conviction court is not attributable to Gisleson's inexperience or any particular

error, but rather to the state post-conviction court's decisions to deny a hearing, discovery, and funds—decisions which are entitled to deference and which Wessinger does not challenge before this court.

Gisleson's performance in raising and developing Wessinger's claim for ineffective assistance of trial counsel at the penalty phase was not deficient. Furthermore, Wessinger failed to satisfy the prejudice inquiry, as he cannot show Gisleson's particular unreasonable errors, rather than decisions by the state post-conviction court, "actually had an adverse effect on the defense." *Strickland*, 466 U.S. at 693. The district court therefore erred in concluding that Wessinger's initial-review counsel was ineffective.

IV

We REVERSE the district court's grant of habeas relief.

No. 15-70027

JAMES L. DENNIS, Circuit Judge, dissenting:

If Todd Wessinger's state habeas counsel had performed in the way that the majority opinion describes, I would join in reversing the judgment of the district court. But the evidence presented to the district court paints an entirely different picture. As the majority opinion notes, counsel filed a motion to withdraw as counsel shortly before he submitted the first amended petition. What the majority opinion fails to acknowledge is that *eighteen months* elapsed before counsel was informed that his motion had been denied and that during those eighteen months counsel never bothered to determine the status of his motion: inexplicably assuming that his duties had ended the moment he filed his motion with the Louisiana Supreme Court, counsel walked away from Wessinger's case and did not look back.

I agree with the majority opinion that some of counsel's omissions were the result of the state post-conviction court's decisions to deny a hearing, discovery, and funds. But these omissions were necessarily exacerbated by his total abandonment of the case for eighteen months. Had counsel acted with minimal diligence and learned that he had not been permitted to withdraw, there is much he could, and should, have done to advance his client's cause. Crucially, as the district court noted, he should have conducted his own mitigation research. Counsel testified that he knew that further mitigation investigation was necessary, but he failed to do the work that he could have done himself, such as interviewing known witnesses and family members and reviewing medical and school records. Beyond the intrinsic value of what this evidence would have revealed, his research would have placed his requests for funding and mitigation assistance on substantially stronger ground.

Wessinger's state habeas counsel did not make a strategic choice not to conduct his own mitigation investigation; nor was his course of conduct

10

mandated by state court decisions, as the majority opinion wrongly asserts. Instead, counsel's failure to pursue a thorough mitigation investigation was traceable to his unexplainable failure to check on the status of his motion to withdraw or otherwise engage in any way with the case after he filed the first amended petition, in violation of all professional standards. *See Maples v. Thomas*, 565 U.S. 266, 284–85 (2010); La. Rules of Prof'l Conduct R. 1.16 (1987) (repealed 2004). The majority opinion's omission of any reference to what was counsel's most critical failure renders its conclusions meaningless. I believe that counsel's abandonment of his client's case for eighteen months rendered his performance constitutionally deficient.

Because the majority opinion does not address the state's remaining challenges to the district court's grant of relief, I will not discuss the merits of those challenges here. However, I believe that the district court's judgment is sound, and I would affirm its grant of relief. I therefore respectfully dissent.