KAREN NELSON MOORE, Circuit Judge,
dissenting.
Despite numerous efforts to contact his court-appointed counsel, Sentoryia Young was never consulted about his state post-conviction appeal. After several months and three lapsed filing deadlines, Young wrote to the state court requesting new counsel, explaining that after hundreds of unreturned phone calls, Young had yet to meet, let alone speak with, his appellate counsel. When an appellate brief was hastily filed by counsel a week later, with a motion to excuse the four-month delay, Young had yet to be contacted by his counsel. Rather than appoint new counsel, the state appellate court considered and rejected the brief on the merits, but did not address the eight claims raised below that Young’s counsel neglected to raise on appeal. The majority contends that Young must now bear the cost of the failures of his appellate counsel, whose actions caused the procedural default of these claims. Because I believe that Young was abandoned under the standard in Maples v. Thomas, 565 U.S. 266, 132 S.Ct. 912, 181 L.Ed.2d 807 (2012), I respectfully dissent.
Young argues that although he procedurally defaulted the claims not raised in his state appellate brief, he can nonetheless establish cause for the default because his court-appointed postconviction appellate counsel, Hershell Koger, abandoned him. Young states that Koger never communicated with him regarding his case and failed to return hundreds of direct calls made by Young. Appellant’s Br. at 11. After numerous failed attempts to reach Koger, Young contacted Amy D. Harwell, who had represented Young at trial, and expressed concern about whether an appeal brief had been filed in his postconviction proceedings. R. 71-1 (Harwell Aff. at 5) (Page ID #2754). Harwell attempted to contact Koger directly multiple times, but was unable to reach him. Id. at 6 (Page ID #2755). She observed that “on a number of occasions Mr. Koger’s voice mail was full and not accepting calls.” Id. Paul Bruno, Young’s postconviction trial counsel, also did not recall being able to contact Koger about Young’s case. R. 71-2 (Bruno Aff. at 2) (Page ID #2758). Harwell ultimately *270 contacted the trial court’s chambers to inquire whether an appeal brief had been filed in Young’s postconviction case. R. 71-1 (Harwell Aff. at 6) (Page ID #2755). Specifically, Harwell spoke with Grace Guerra, one of the clerks of the trial court, who declared that upon hearing from Har-well:
I spoke to someone at the front desk [of the appellate court] and they said that [Roger] had missed the deadline. I took it upon myself to call Roger because I did not know if he knew that he had missed the deadline.... I called him and left a voicemail. In the voicemail, I said that he could call my cell- phone. I rarely give out my cell phone number to attorneys, but felt that it was important the he follow through with his duties on Mr. Young’s case,... Roger never returned my call,
R. 71-4 (Guerra Aff. at 2) (Page ID #2769). By the time Guerra attempted to reach him, Roger had missed three filing deadlines for Young’s appellant brief. On January 14, 2011, the original due date for the brief, Roger filed a motion for a thirty-day extension, which the court granted. R. 71-3 (1st Mot. for Extension at 1) (Page ID #2760). He filed a second motion for a thirty-day extension on February 16, 2011, two days after the new filing deadline, which the court again granted. R. 71-3 (2d Mot. for Extension at 1) (Page ID #2762); R. 71-3 (Order at 1) (Page ID #2764). Roger missed the third deadline, this time taking no action to request an extension.
Upon learning that Roger had missed the third deadline, Young filed a formal complaint regarding Roger. In this complaint, Young stated that “I’ve called Mr. Roger about 500 times since he was appointed to represent me. Not once have I ever even spoken to Mr. Roger regarding my brief.” R. 71-5 (Mem. of Complaint at 1) (Page ID #2771). Young requested the court to remove and replace Roger as counsel. Id, One week later, on May 2, 2011, nearly two months after the third deadline had lapsed, Roger filed a motion to file appellant’s brief late, citing “counsel’s error and oversight.” R. 71-3 (Mot. to File Late at 1) (Page ID #2765). The brief, which Roger prepared without consulting his client, failed to raise eight claims that had been raised below.
Cause for a procedural default exists where “something external to the petitioner, something that cannot fairly be attributed to him[,] ... ‘impeded [his] efforts to comply with the State’s procedural rule.’ ” Coleman v. Thompson, 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Although a postconviction attorney’s negligence does not constitute cause, the Supreme Court has carved out an exception in cases where an attorney’s actions go beyond ineffectiveness and amount to client abandonment. Maples, 565 U.S. at 280-81, 132 S.Ct. 912. In articulating this difference, the Court relied upon principles of agency law, and reasoned that whereas “the principal bears the risk of negligent conduct on the part of his agent,” id. at 281, 132 S.Ct. 912, an attorney who abandons his client severs the principal-agent relationship, and, as such, “a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of that word,” id. at 282, 132 S.Ct. 912 (quoting Holland v. Florida, 560 U.S. 631, 659, 130 S.Ct. 2549, 177 L.Ed.2d 130 (Alito, J., concurring in part and concurring in judgment)).
Young has clearly alleged “extraordinary circumstances beyond his control.” Id. In Maples, the Supreme Court suggested that abandonment can be “evidenced by counsel’s near-total failure to communicate with petitioner or to respond to petitioner’s many inquiries and requests *271 over a period of several years.” Id. (citations omitted). Here, Young alleges that Roger failed to speak with him even once despite hundreds of calls from Young. He also alleges that Roger failed to respond to numerous other calls from two attorneys previously assigned to the case, and never returned a phone call to the trial court’s clerk, who alerted Roger that he had missed the deadline to file the appellate brief.
The majority contends that while Roger’s failure to communicate amounts to ineffectiveness, that alone is insufficient to establish a claim of abandonment. To be sure, a failure effectively to communicate may amount to simple negligence in certain cases. But the majority overlooks two things. First, the failure to communicate here went far beyond the “garden variety” negligence that typically gives rise to an ineffective assistance claim. See Holland, 560 U.S. at 651-52, 130 S.Ct. 2549. Here, Roger’s silence was remarkable both because of Young’s diligence in attempting to contact his lawyer and because Roger did not just ignore his client, or even his fellow counsel, but also employees of the court. Not one party involved in this case was given any indication that Roger was representing Young’s interest. The facts here indicate that the conduct amounted to far more than simple negligence. The failure to communicate here, in other words, was “extraordinary.” See id. at 652, 130 S.Ct. 2549.
Second, by the majority’s own admission, Roger’s failure to communicate is not the sole basis of Young’s abandonment claim.[1] Roger also missed numerous filing deadlines and failed to research properly the claims that he could raise. Taken together, Roger’s conduct resembles the conduct at issue in Holland, which the Supreme Court held went beyond a “garden variety claim of excusable neglect” and amounted to an “extraordinary” case of attorney misconduct. 560 U.S. at 651-52, 130 S.Ct. 2549 (quoting Irwin v. Dep’t of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)). Like the lawyer in Holland, Roger “failed to file [Young’s appellate brief] on time despite [Young’s hundreds of calls in which Young] repeatedly emphasized the importance of him doing so,” Holland, 560 U.S. at 652, 130 S.Ct. 2549. Roger similarly failed to respond to Young’s numerous “pleas for ... information” about the status of his appeal. Id. Whereas Holland’s lawyer failed to research the proper filing date, Roger appears to have done the same, and what’s worse, failed to research the substantive issues in Young’s appeal, despite the fact that these issues were identified in the proceedings below and that the attorney who originally briefed them had tried to reach out to Roger about the case.[2] Id.; *272 R. 71-2 (Bruno Decl. at 1) (Page ID #2757). As in Holland, Roger did not attempt to make a proper filing on Young’s behalf until Young had formally complained about Roger’s inadequate representation.[3] Holland, 560 U.S. at 643, 130 S.Ct. 2549 (noting that defendant’s lawyer mailed a proposed federal habeas petition to his client the day after he responded to a complaint before the Florida Bar Association). Finally, as detailed above, Roger “failed to communicate with his client ... despite various pleas” from Young, Young’s prior attorneys, and the trial court’s clerk. Id. at 652, 130 S.Ct. 2549.
The majority contends that Holland is distinguishable because Roger ultimately filed a brief for Young. It is worth noting that Holland’s lawyer also eventually prepared a belated filing for his client, but rather than file it directly with the court, he first asked his client to review it. Id. at 643, 130 S.Ct. 2549. If producing work-product months after a lapsed deadline was insufficient in Holland, it is unclear why that is not,also true here. In either case, I believe that the principal-agent relationship was severed before these belated attempts at representation, and that the lawyers, in both cases, lacked the authority to act on behalf of their client.
“[U]nder agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him.” Maples, 565 U.S. at 283, 132 S.Ct. 912. In Maples, the Supreme Court held that the defendant had been abandoned when his two primary attorneys left their firm without notifying their client or seeking the court’s permission to withdraw. Id. at 283-85, 132 S.Ct. 912. The Court concluded, on the basis of agency law, that their agency relationship was severed once the lawyers began new employment. Id. at 284-85, 132 S.Ct. 912. The Court also found that although local Alabama counsel remained as attorney of record in the case, he “did not operat[e] as [Maples’s] agent in any meaningful sense of that word” because he “did not even begin to represent Maples,” and upon receiving a trial court’s order, he did not “contact [co-counsel] to ensure that firm lawyers were taking appropriate action.” Id. at 287, 132 S.Ct. 912.
As in Maples, Young was “left without any functioning attorney of record.” Id. at 288, 132 S.Ct. 912. Young was given no reason to believe that Roger was operating as his agent or otherwise representing his interests. Over a period of several months, Young did not hear from, and could not get in touch with, his new postconviction counsel. When permitted, Young made countless phone calls from prison and reached out to others who might be able to assist him, including former attorneys who had worked on his case. Roger did not even respond to inquiries from the trial court’s clerk. Finally, in the face of apparent abandonment, Young filed a complaint seeking new counsel, in order formally to sever the principal-agent relationship.
The majority contends that there was no severance of the agency relationship in this case, because, unlike Maples’s firm law *273 yers, Koger did not assume new employment or otherwise breach his duty of loyalty. But a breach of the duty of loyalty is not the only way an agent’s authority may be terminated. Maples’s local counsel, after all, never created a conflict of interest that terminated his authority. A principal also has the power to revoke authority by “indi-cat[ing] that the principal no longer consents to have the agent act for him.” Restatement (Second) of Agency, § 119 cmt. a. And while Young did not have a right to his choice of court-appointed counsel, “where a district court is on notice of a criminal defendant’s dissatisfaction with counsel, the court has an affirmative duty to inquire as to the source and nature of that dissatisfaction—regardless of whether the attorney is court-appointed or privately retained.” Benitez v. United States, 521 F.3d 625, 634 (6th Cir. 2008). In order to remove court-appointed counsel, a defendant must show good cause, such as by demonstrating that “the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense.” Id. at 632 (quoting United States v. Iles, 906 F.2d 1122, 1130 n.8 (6th Cir. 1990)). Once Koger demonstrated abandonment, Young requested Koger be removed for cause, citing Koger’s failure to communicate, to meet deadlines, to keep his client informed of key developments, and to honor his client’s reasonable requests. The notice Young provided was supported by good cause, and was therefore sufficient to sever the agency relationship.
The equitable principles underlying the cause exception to procedural default weigh against holding liable a petitioner who has done everything in his power to advocate on his own behalf when abandoned by his counsel. See Maples, 565 U.S. at 283, 132 S.Ct. 912; Holland, 560 U.S. at 645, 653, 130 S.Ct. 2549 (holding that equitable tolling may apply where petitioner wrote numerous letters to his attorney that went unanswered, and “also repeatedly contacted the state courts, their clerks, and the ... State Bar Association in an effort to have [his attorney]—the central impediment to the pursuit of his legal rem-r edy—removed from his case.”). I believe that Young has established abandonment and thus has cause for proeedurally defaulting on the eight claims raised at his initial postconviction hearing.
The majority also argues that Young failed to show prejudice because ‘Young was solely concerned with making sure that an appellate brief was filed on his behalf,” which the state court ultimately allowed. Majority Op. at 266. The record does not support this assertion. Although declarations ñ’om Young’s former counsel state that Young was concerned with whether a brief had been filed, nothing in the record indicates that this was Young’s only concern. Young’s complaint to the court indicated that he was concerned that “not once have I ever even spoken to Mr. Koger regarding my brief,” which could indicate a concern not just with the filing, but with the content of the brief. R. 71-5 (Mem. of Complaint at 1) (Page ID #2771).
Finally, the majority asserts that the record does not support Young’s argument that the defaulted claims were the “best and most obvious issues,” because the initial postconviction court summarily dismissed all but five of Young’s twenty claims in a single paragraph. Majority Op.’ at 266-67. The majority argues that if the postconviction court deemed it unnecessary to address the remaining claims in detail, Koger could have made a strategic decision to raise only those issues that were likely to succeed. Id. at 18-19. Even accepting this flawed logic, the majority’s conclusion does not follow. Of the five issues the initial postconvinction court decided to brief in detail, Koger raised only two. *274 The majority cannot explain why the remaining three issues—-juror misconduct, a sleeping juror, and failure to move for mistrial with prejudice—were so lacking in merit to justify Roger’s omission, or, conversely, why two issues not thoroughly briefed by the lower court were more worthy of attention on appeal. Moreover, there is evidence to support that these omitted claims were meritorious. For example, although the state court held that Young failed to establish that a sleeping juror “failed to follow some important or essential part of the proceeding,” R. 34-27 (Initial State Postconviction Order at 4) (Page ID #2437), the trial court’s clerk stated in her declaration that “[ejveryone in Judge Fishburn’s court, including myself, heard about one of the jurors sleeping throughout the whole trial,” R. 71-4' (Guerra Aff. at 1) (Page ID #2768) (emphasis added).[4] The record therefore does not support the majority’s assertion that Roger’s brief was the product of sound trial strategy.
Young has demonstrated that he was abandoned by counsel and that he was prejudiced by “extraordinary circumstances beyond his control.” Maples, 565 U.S. at 282, 132 S.Ct. 912 (citations omitted). Under the Supreme Court’s holding in Maples, this abandonment constitutes proper cause for Young’s default. The majority viewing this matter differently, I respectfully dissent.

. The majority deals with Young’s "three problems” separately, and points out that each claim, on its own, is insufficient to establish abandonment. Majority Op. at 261-63, As explained below, the problems cited by Young must be viewed together to determine if Roger’s conduct amounts to abandonment rather than mere negligence. See Holland, 560 U.S. at 652, 130 S.Ct. 2549.

. Contrary to the majority’s assertion, I do not argue that Roger was obligated to raise all five claims discussed by the-state court. See Majority Op. at 266 n.3. I agree that claim abandonment alone does not amount to client abandonment, But while an attorney's decision not to raise certain claims may “sound more in strategy than abandonment,” the failure to research those claims does not. Id. Coupled with further evidence of an utter failure to communicate, a failure to conduct the research necessary for adequate representation was, in Holland, proof of an extraordinary circumstance beyond Holland’s control. Here, viewing the facts in their entirety, including not only the failure to raise these claims, but also the circumstances surrounding the filing, the record indicates that Roger, one week after Young requested his removal *272 as counsel, attempted a last-ditch effort by filing a hastily written brief and requesting leave to file that brief despite "counsel's error and oversight.” R. 71-3 (Mot. to File Late at 1) (Page ID #2765). His failure to raise claims deemed important by either the trial court, trial counsel, or Young, while itself insufficient to constitute client abandonment, is evidence of his failure to research the case.

. In Holland, defendant’s lawyer drafted defendant’s habeas petition three months after the statute of limitations had passed. Holland, 560 U.S. at 643, 130 S.Ct. 2549. Here, Roger filed Young’s appellate brief nearly four months after the original deadline and nearly two months after the third and final extended deadline.

, The majority notes that our review of the state court's rejection of this evidence would be subject to AEDPA deference. See Majority Op. at 266 n.3. That is wholly irrelevant here—we are not reviewing the state court’s rejection of this evidence, we are assessing Young’s claim of abandonment. Although the state court rejected Young’s sleeping juror claim on the merits, there is nothing to support the majority’s assertion that Roger’s decision to omit that claim on appeal was the result of strategic decision-making.